THE STATE v. HALLETT MARSHALL, Appellant.—34 S. W. (2d) 29.

Division Two, December 31, 1930.

*Paul A. Richards* for appellant.

*Stratton Shartel*, Attorney-General, and *Ray Weightman*, Assistant Attorney-General, for respondent.

HENWOOD, J.—By an information filed in the Circuit Court of the City of St. Louis, the defendant is charged with robbery in the first degree, as defined in Section 3307, Revised Statutes 1919, and, for the purpose of bringing the case within the provisions of Section 3702, Revised Statutes 1919, known as the Habitual Criminal Act, it is alleged in the information that the defendant was previously convicted of stealing a motor vehicle, imprisoned and discharged. The jury found him "guilty of robbery in the first degree and of one prior conviction, as charged in the information," and assessed his punish-

ment at imprisonment in the penitentiary for life. He was sentenced accordingly, and, in due course, appealed.

The defendant, through his attorney, admitted that, on April 9, 1928, in the Circuit Court of the City of St. Louis, he was duly convicted, on his own confession, of stealing a motor vehicle, and duly sentenced, in accordance with said conviction, to imprisonment in the city workhouse of the city of St. Louis for one year, and duly discharged from said workhouse after and upon lawful compliance with said sentence.

With reference to the alleged robbery, the State developed the following evidence: About three o'clock in the morning of August 2, 1929, the defendant entered, through the front door, a restaurant at 205 North Eleventh Street, in the city of St. Louis, owned and operated by Dew Drop Inn, a corporation duly organized and existing under the law of Missouri. At that time, John Stewart, the night manager, was "sitting down," leaning against a partition, in the rear part of the restaurant. Glenn Phipps, the night cook, was sitting at the counter, by the cash register, drinking a cup of coffee; and Malcolm McCall was standing in the front door, sweeping. There were no other persons in the restaurant. When the defendant walked into the restaurant, he had his right hand inside of his shirt. The defendant "ordered" a cup of coffee, and, when Phipps got up to serve the defendant, with his back to the defendant, the defendant "had something in his hand" that McCall "couldn't see. but he had it against the cook's (Phipps') stomach, on the side of him." Phipps "looked quite natural, but he stood there as though he was petrified." Stewart saw no weapon in the defendant's hand. The defendant said to Phipps: "All right, get on the floor and no noise." Phipps "went onto the floor." Then, speaking to McCall, who was sweeping near the front door, the defendant said, "Come over here, you." McCall replied: "You go to hell." And, as he so addressed the defendant, McCall dropped his broom or brush, and "out the door" he went. He "ran over to Olive Street," yelling "robber;" then on, a couple of blocks, to a fire engine house, where he asked the man at the desk to call police headquarters. While Phipps was on the floor, defendant "cleaned" the cash register. He took all of the money out of the cash register, "around fifty-five or sixty dollars," the property of Dew Drop Inn, "put it in his front pockets," and left the restaurant, hurriedly, through the front door. The rear part of the restaurant, where Stewart was sitting, was dimly lighted, and, apparently, the defendant did not see Stewart. Stewart said: "I stayed there because the man (the defendant) had his hand in his shirt; I didn't know whether he had a pistol or not; I was scared to get up; I don't think he (the defendant) even saw me." John J. Ryan, a private watchman in that vicinity, heard McCall yelling "robber," and arrested the defendant about twenty-five feet north of the restaurant, on North

Eleventh Street. When arrested, the defendant said to Ryan: "Well, I guess you have got me." Then "he took money out of his pocket, both his front pockets, and threw it on the sidewalk." This money was picked up, a few minutes later, by police officers. When searched at police headquarters, the defendant had "fifty-seven dollars and thirty cents" in his pockets, but the officers "didn't find any weapon on him." Shortly after the defendant was taken to police headquarters, he was questioned by Walter C. Bauer, a detective, who testified as follows: "I asked if he went in there and took that money. He said he had; that he went in, there and taken the money; and went behind the counter, and made the cook lay on the floor, and went to the cash register, and took the money out. And I asked what he done with the money, and he said he put in in his front pants pockets. He stated he didn't have any weapon, he merely had his hand in his shirt. He said he started to leave the place, and that was when he was arrested by Watchman Ryan." Phipps worked at the restaurant only a short time "after the holdup," and did not testify at the trial of this case. Eugene Canda, a police officer, attached to the Circuit Attorney's office, made "an effort to locate the witness Glenn Phipps," but "was unable to find him."

No evidence was offered on behalf of the defendant.

I. The defendant contends that Section 3702, Revised Statutes 1919, known as the Habitual Criminal Act, "only applies to those persons who have actually been imprisoned in the penitentiary," and

that the allegations of the information are not sufficient to bring this case within the provisions of Section 3702, because, according to the allegations of the information, the defendant, though previously convicted of stealing a motor vehicle, was punished therefor by imprisonment in the city workhouse of the city of St. Louis for one year and not by imprisonment in the penitentiary.

Section 29 (a) of the Motor Vehicle Act of 1921, provides that— "Any person who shall be convicted of feloniously stealing, taking or carrying away any motor vehicle, . . . shall be guilty of a felony and shall be punished by imprisonment in the penitentiary for a term not exceeding twenty-five years or by confinement in the county jail not exceeding one year, or by fine not exceeding one thousand dollars ($1,000) or by both such fine and imprisonment." [Laws 1921, 1st Ex. Sess., p. 105.]

Sec. 3702, Revised Statutes 1919, provides that—"If any person convicted of any offense *punishable* by imprisonment in the penitentiary, . . . shall be discharged, either upon pardon or upon compliance with the sentence, and shall subsequently be convicted of any

offense committed after such pardon or discharge, he shall be punished,'' etc. (Our italics.)

While it is alleged in the information that the defendant was *punished*, for his previous offense of stealing a motor vehicle, by imprisonment in the city workhouse of the city of St. Louis, said offense was *"punishable* by imprisonment in the penitentiary,'' and, therefore, the allegations of the information are clearly sufficient to invoke the provisions of Section 3702. Had the framers of this section intended that it should apply only to persons who have been *punished*, for a previous offense, by imprisonment in the penitentiary, undoubtedly they would have said so. They did say, in plain and unmistakable language, that is should apply ''to any person convicted of any offense *punishable* by imprisonment in the penitentiary,'' and it cannot be construed otherwise. In support of his contention, the defendant cites the case of State v. English, 308 Mo. l. c. 708, 274 S. W. l. c. 474, wherein Judge WHITE said: ''The section (Sec. 3702) under which the defendant was charged provides that if one has been convicted and has served a term in the penitentiary his punishment of the second offense shall be the longest term prescribed for such conviction if it were the first offense.'' The question now under consideration was not presented, nor was it decided, in the English case. According to the indictment and the proof in that case, English had served a term in the penitentiary as punishment for a previous offense, and the statement of Judge WHITE above quoted, was made, doubtless, through inadvertence, in connection with his discussion of the error in the verdict in that case, as to the punishment assessed by the jury, and of the proper punishment in that case, as prescribed by Section 3702. The statement of Judge WHITE, in so far as it relates to the class of cases covered by Section 3702, was *obiter dictum* and must be so regarded.

II. The defendant also challenges the sufficiency of the evidence, on the ground that it fails to show that he obtained the money in question by using force and violence or by putting Phipps in fear of some immediate injury to his person.

The evidence shows that the defendant entered the restaurant, with his right hand inside his shirt, and ''ordered'' a cup of coffee; that when Phipps got up to serve the defendant, with his back to the defendant, the defendant ''had something in his hand'' that McCall ''couldn't see, but he had it against the cook's (Phipps') stomach, on the side of him;'' that Phipps ''stood there as though he was petrified;'' that, then, the defendant commanded Phipps to get on the floor and to make no noise, and Phipps ''went onto the floor'' and quietly remained there while the defendant took the money from the cash register; that, when the defendant commanded McCall, the dishwasher, to come closer to him (the defendant), McCall, who was sweeping near the front door of the restaurant, fled from the res-

taurant, yelling "robber;" that Stewart, the night manager, who was seated in the rear part of the restaurant, and, apparently, not observed by the defendant, "stayed there because the man (the defendant) had his hand in his shirt," and because he "was scared to get up;" and that the defendant told officer Bauer "he had his hand in his shirt, and went behind the counter, and made the cook (Phipps) lay on the floor, and went to the cash register and took the money out."

According to the defendant's own description of the occurrence, as testified to by officer Bauer, the defendant obtained the money in question by putting Phipps in fear of some immediate injury to his person. But, as above shown, the evidence, exclusive of the defendant's confession, is amply sufficient to support the finding of the jury in this particular. [See State v. Hall (Mo. Sup.), 7 S. W. (2d) 1001.]

The defendant has presented no other questions for our consideration. However, we have carefully examined the entire record and find no prejudicial error. The judgment is affirmed. All concur.